## The Louisville Fire Brick Works, Inc., Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 100482.    Promulgated December 27, 1940.

*Frank A. Ropke, Esq.*, and *J. H. McMurtry, Esq.*, for the petitioner.
*Stanley B. Pierson, Esq.*, and *Roy N. McMillan, Esq.*, for the respondent.

180

OPINION.

HARRON: Petitioner claims deduction in 1936 in the amount of $12,695.92, the unrecovered cost for income tax purposes of the track extension, as a loss uncompensated for by insurance or otherwise, under section 23 (f) of the Revenue Act of 1936. The facts show that in 1936 all possible benefit to petitioner from the railway extension ended. The extension had been deeded in its entirety to the C. & O. in 1927, without reverter of the land on which the track was laid. When the track was removed in 1936 nothing remained to benefit petitioner. Under these facts the question is whether or not petitioner sustained a deductible loss from its original investment in bringing into existence a railway extension reaching to its lands for the purpose of providing it with railway transportation facilities.

Petitioner expended $19,532.19 in excess of the sum it received upon conveyance of the extension to the C. & O. It claims deduction of $12,695.92, having received tax deductions for depreciation in the sum of $6,836.27 in prior years. Whether or not petitioner properly took deductions for "depreciation" in prior years with respect to this particular kind of capital expenditure is not a question in this case, and need not be considered.

Respondent disallowed the deduction in 1936 on the ground that the loss, if any, was sustained in 1934. As will be shown hereafter, this was error. Petitioner sustained a loss in 1936 for which it is entitled to deduction.

It should be pointed out first that, while petitioner's claim for a loss deduction is sustained, it is not sustained upon the ground that the loss resulted from a "breach of contract" by the C. & O. upon its removal of the track in 1936. The agreement with the C. & O. consists of letters between the parties confirming oral agreements relating to the construction by petitioner and Ashland and the purchase by C. & O. The material letters, dated June 30, 1926, and August 12, 1926, which are in evidence, do not state any covenant by C. & O. to maintain service over the railway extension for any period of time, or to refrain from removing the track, or any other matter from which it could possibly be concluded that the C. & O. breached its contract in 1936 or in prior years. There is no merit to this argument of petitioner. If there was a "breach of contract" petitioner would be presumed to have a right of recovery to compensate it for loss.

Petitioner expended in 1926 a substantial sum to construct a railway extension, with Ashland, intending to deed it to the C. & O. Railway without retention of any rights in tangible property. Such expenditures, heretofore considered by this Board and the courts, have been held to be in the nature of capital expenditures. See *Gauley Mountain Coal Co.* v. *Commissioner*, 23 Fed. (2d) 574; *Colony Coal & Coke Corporation*, 20 B. T. A. 326; affd., 52 Fed. (2d) 923; *Kauai Terminal, Ltd.*, 36 B. T. A. 893; *Chicago & North Western Railway Co.*, 39 B. T. A. 661; affd., 114 Fed. (2d) 882.

The expenditure made by petitioner was for the purpose of bringing a railway track to its lands to provide it with more accessible railway transportation facilities. This was intended to and expected to benefit petitioner in the conduct of its business. The expenditure was made for a benefit, and as long as the railway extension physically existed in the particular location the benefit to petitioner, actual or potential, existed. This benefit, tangible or intangible, was an asset to petitioner and the acquisition thereof required a substantial expenditure by petitioner. On October 1, 1934, the C. & O. obtained permission from the Interstate Commerce Commission to abandon the extension. The certificate granted a permission. It was not a mandate to abandon the extension. The C. & O. could have changed its attitude. When the C. & O. discontinued service over the railway extension during 1934 and 1935 there remained the possibility that service might be resumed, for as long as the track remained in place service could be resumed. As long as that situation obtained petitioner did not sustain a loss.

Respondent, accordingly, errs in his contention that the loss, if any, was sustained prior to the year 1936. When the track was removed in 1936 there came to an end both the possibility of resumption of service and all potential benefit to petitioner from the very existence of the railway extension. If a loss was sustained, it was sustained in 1936.

The ultimate question, whether or not petitioner sustained a loss, under the particular facts, is a question of first impression in this proceeding. Respondent argues that petitioner can not be said to have sustained a loss because it had no tangible property interests in the railway extension, which was owned by the C. & O. In *Gauley Mountain Coal Co.*, *supra*, the court considered the question whether, as here, payments made by a coal company to a railroad company in consideration of the railroad's agreement to construct a railway line from the main line to the coal mines could be treated as invested capital for the purposes of computing income and excess profits taxes, within the provisions of section 326 of the Revenue Act of 1918. The facts relating to the method of payment of the consideration to the railway company differed from the method of payment here, but otherwise the facts are the same. Title to the railway extension was in the railway company. The court held that the expenditure by the coal company constituted invested capital because, among other things, the coal company acquired a valuable right. The court stated, in part, as follows:

* * * Whether the rights acquired as a result of the railroad connection obtained are to be defined as tangible or intangible property, it is not necessary to inquire. Intangible property, which enables a taxpayer to save or earn money, is as legitimate a form of capital investment as tangible property. * * * The railroad connection itself is quite tangible, the rights flowing therefrom are intangible; * * * the connection and the rights incident thereto are of great value to the taxpayer, and save it many thousands of dollars annually in marketing its coal.

 \*      \*      \*      \*      \*      \*      \*

It is clear that, although the track does not belong to the taxpayer, and the contract does not provide a specific period during which the service over it shall be continued, nevertheless the laying of the track and the railroad connection resulting therefrom established for the taxpayer a relationship with the railroad of mutual advantage and of great and continuing value to the taxpayer.

The court considered, exhaustively, the various arguments against the concept of "invested capital." It concluded that what was acquired by the payments made in consideration for the construction of the railway line to the mines was not "a mere transitory service, nor a mere intangible increase in the value of property."

In this case, which comes squarely within the ambit of the court's reasoning in the *Gauley Mountain* case, petitioner paid out money to obtain intangible rights of benefit to its business. There can be no

question, under the conclusion reached in the above cited case, that its expenditure in 1926 constituted invested capital. It is not material that petitioner's use of the rights obtained was less than it and the C. & O. anticipated, for it is evident that originally the benefits were expected to extend over an indefinite period of time, looking to the future development of petitioner's lands. (It appears that Ashland made use immediately of the rights it obtained.) Under such circumstances the removal of the track in 1936 was as much a loss of an asset to petitioner as would be true if one of its physical properties, a plant or equipment, had been destroyed. The intangible right obtained by petitioner by an expenditure of money was capable of destruction in a real sense, for it could be terminated. In fact, the relation with the railroad, which had a real value to petitioner and for which petitioner expended capital, was terminated by the removal of the tracks in 1936. With the termination of the relation petitioner's capital investment was lost. Undoubtedly, in order to obtain like rail facilities in the future, petitioner would have to make a new expenditure of capital. In such a situation petitioner should be allowed deduction for a loss.

It is concluded that petitioner sustained a loss in the taxable year in the amount of $12,695.92 under the provisions of section 23 (f).

Reviewed by the Board.

*Decision will be entered under Rule 50.*